**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ERICA KEARNEY,<br><br>      *Plaintiff,*<br><br>v.<br><br>DISTRICT OF COLUMBIA, et al.,<br><br>      *Defendants.* | Civil Action No. 1:24-cv-01793 (CJN) |

**<u>MEMORANDUM OPINION</u>**

In June 2022, James Herndon crashed his three-wheeled vehicle and died during a police chase that was initiated by officers of the Metropolitan Police Department but ultimately grew to include officers of the United States Park Police and the Prince George's County Police Department. Herndon's estate asserts constitutional and tort claims against each of those agencies and their officers for their actions before and during the chase; relevant here, the District has moved to dismiss the complaint as to it. For the reasons below, the Court grants in part and denies in part that motion.

I.    **Background**

A.    **Factual Background**

As stated, this case concerns Herndon's tragic death in June 2022. ECF No. 1 (Compl.) ¶ 27. The complaint alleges that, in the early morning hours of June 27, Herndon was sitting on his motorized three-wheeled vehicle on Ninth St. NW, in the District, when he was approached by MPD officers who believed he had an active arrest warrant for murder. *Id.* ¶¶ 27–30. Herndon rode away on his vehicle, and the officers began to pursue him with their lights and sirens activated.

1

*Id.* ¶¶ 31–32.  During the pursuit, officers enlisted the assistance of additional MPD officers, as well as officers of the United States Park Police and the Prince George's County Police Department.  *Id.* ¶¶ 33–34.

After MPD and the other police agencies had been chasing Herndon for approximately an hour throughout the District and Prince George's County—with Prince George's County providing helicopter support—MPD realized that Herndon actually did not have a warrant for murder and so "discontinued" its pursuit.  *Id.* ¶¶ 35–36, 38.  MPD did not, however, communicate those facts to the Park Police or the Prince George's County Police Department, which continued the chase.  *Id.* ¶ 36.  According to the complaint, throughout this time Prince George's County was "contemporaneously provid[ing] updates to both MPD and [the Park Police] regarding [Herndon's] location and direction of travel."  *Id.* ¶ 38.  Somewhere between 10 and 16 minutes after MPD ended its pursuit, Park Police officers allegedly forced Herndon off the road, causing him to lose control of his vehicle and crash into a light pole on Benning Road NE, inside the District.  *Id.* ¶¶ 36–37, 39.  Herndon died of his injuries at the scene.  *Id.* ¶ 40.

**B.    Procedural History**

After Herndon's death, his estate, through its appointed representative Erica Kearney, initiated this lawsuit against the District of Columbia, MPD, the United States Park Police, the Prince George's County Police Department, and John Doe officers of each department.  *Id.* at 3 & ¶¶ 3, 8.  The complaint asserts § 1983 and *Bivens* claims based on the officers' alleged use of excessive force and interference with Herndon's substantive due process rights and right to travel.  *Id.* ¶¶ 46–102, 161–67 (citing U.S. Const amends. IV, V, and XIV).  The complaint also asserts various tort claims under D.C. law—negligence, gross negligence, negligence *per se*, negligent

supervision, intentional infliction of emotional distress, and, as against only the Park Police and its officers, assault and battery. *Id.* at 103–160, 168–79.

The District of Columbia, on behalf of itself and MPD, moved to dismiss the complaint. *See* ECF No. 12 (MTD). The United States of America, on behalf of the Park Police and its John Doe officers, also moved to dismiss, but subsequently began settlement negotiations and asked the Court to stay adjudication of its motion—a request the Court granted. *See* ECF No. 16; ECF No. 29; Min. Order of Aug. 6, 2025. Prince George's County answered the complaint and is engaged in discovery. *See* ECF No. 11; ECF No. 31. The only ripe motion is thus the District's.

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully," and "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotation marks omitted).

## III.    Analysis

The Court begins with the various claims that Kearney concedes in her opposition brief. *First*, Kearney concedes that MPD is not a proper defendant because it is a *non sui juris* entity. *See* ECF No. 15 (Opp.) at 3; *see also Heenan v. Leo*, 525 F. Supp. 2d 110, 112 (D.D.C. 2007). *Second*, Kearney concedes that she has not pleaded sufficient facts to support *Monell* liability, *see*

Opp. at 7, which means that she may not maintain her § 1983 claims against the District.[1]  *See Brown v. D.C.*, 514 F.3d 1279, 1283 (D.C. Cir. 2008) (explaining that a municipality may be held liable under § 1983 only when "the complaint states a claim that a custom or policy of the municipality caused the violation") (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 690–91 (1978)).  *Third*, Kearney concedes that she has not alleged sufficient facts to support her negligence *per se* claim.  *See* Opp. at 10.

The remaining claims against the District are for negligence and gross negligence, negligent supervision, and intentional infliction of emotional distress.  The Court addresses each in turn.

### A.    Negligence and Gross Negligence

To succeed on any negligence claim under D.C. law, a plaintiff must show that there was "a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, and a damage to the interests of the plaintiff, proximately caused by the breach."  *Simms v. District of Columbia*, 699 F. Supp. 2d 217, 227 (D.D.C. 2010).  Here, Kearney contends that the District is liable under *respondeat superior* for the allegedly negligent actions of MPD officers in the sequence of events leading up to Herndon's death.  Compl. ¶¶ 104, 113.  She claims three specific breaches: (1) that officers breached their duty to "assure that information given about wanted suspects . . . [i]s current and accurate" by incorrectly identifying Herndon as the subject of an active murder warrant; (2) that officers breached the duty of care they owed to motor vehicle traffic by "engaging in a chase that put Herndon at risk of grave bodily harm"; and (3) that officers

---

[1] Despite conceding her failure to plausibly allege municipal liability, Kearney dedicates several pages of her opposition brief to arguing that she has plausibly alleged violations of the Fourth, Fifth, and (nominally) Fourteenth Amendments.  *See* Opp. at 3–7.  The Court need not reach those issues here because they have no bearing on the success of any claim against the District.

breached their duty to "effectively communicate the termination of [their] pursuit." Compl. ¶¶ 110–12, 115.

The District does not dispute that *respondeat superior* is applicable in this context. *See* MTD at 12–15. Nor does it dispute that, at some level of abstraction, MPD officers owe the duties that Kearney identifies. *See id.* Instead, it argues that Kearney has not adequately pleaded either that the officers breached those duties, or that, even if they did, their breaches were the proximate cause of Herndon's death. *See id.*

As to breach, the first question is what "magnitude of deviation" from the standard of care is required to establish negligence in this context. *D.C. v. Walker*, 689 A.2d 40, 45 (D.C. 1997). The D.C. Employee Non-Liability Act provides that, "in the case of a [damages] claim arising out of the operation of an emergency vehicle on an emergency run[,] the District shall be liable only for *gross* negligence." *Id.* at 42 (quoting D.C. Code § 2-412) (emphasis added). The D.C. Court of Appeals has held that police vehicles pursuing suspects count as "emergency vehicle[s] on [] emergency run[s]," and has further held that "the phrase 'arising out of the operation' [] include[s] contemporaneous decisions to operate" a police vehicle, including "the decision to pursue" a suspect. *Abney v. D.C.*, 580 A.2d 1036, 1041 (D.C. 1990) (applying heightened negligence standard to "the entire chase by the police officer"); *see also Jones-Bey v. D.C.*, 2025 WL 435986, at *4 (D.D.C. 2025) (dismissing under D.C. Employee Liability Act negligence claim regarding fatal police chase). The Court thus agrees with the District's view—which Kearney effectively does not rebut—that a gross negligence standard applies to each of Kearney's negligence claims regarding the police chase, including her claims that officers acted negligently in initiating the pursuit and failing to communicate its termination. *See* MTD at 12–13; Opp. at 8–9 (arguing only that D.C. Code § 2-412 does not displace the principle of *respondeat superior*).

"[G]ross negligence" requires "such an extreme deviation from the ordinary standard of care as to support a finding of wanton, willful and reckless disregard or conscious indifference for the rights and safety of others." *Walker*, 689 A.2d at 45. Beginning with MPD's initiation of the pursuit, Kearney emphasized at oral argument that it is simply impossible to know at this juncture how or why officers arrived at the erroneous conclusion that Herndon was wanted for murder, and that certain means of arriving at that conclusion—such as the officers' simply following a hunch—could support a finding of recklessness or conscious indifference. But even assuming officers *were* grossly negligent in concluding that Herndon had an active warrant and beginning to pursue him on that basis, Kearney has not plausibly alleged that act was a proximate cause of Herndon's injuries. "To establish proximate cause, the plaintiff must present evidence from which a reasonable juror could find that there was a direct and substantial causal relationship between the defendant's breach of the standard of care and the plaintiff's injuries and that the injuries were foreseeable." *D.C. v. Zukerberg*, 880 A.2d 276, 281 (D.C. 2005). Here, regardless of their view at the start of the chase, the MPD officers ultimately came to the correct understanding that Herndon was *not* the subject of a murder warrant, and so discontinued their pursuit. Compl. ¶¶ 35–36. The Court will discuss below whether Kearney has plausibly alleged that officers were required to do more. But the officers' self-correction eliminated the possibility of a "direct and substantial causal relationship" between their initial mistake and Herndon's later tragic death, by effectively giving them the opportunity to wipe the slate clean of that first error entirely.

Kearney also fails adequately to allege that the officers "*engaged* in their pursuit of Mr. Herndon in a reckless [] manner." Opp. at 8 (emphasis added). Other than emphasizing the danger of vehicle pursuits generally, Compl. ¶ 107, and asserting without explanation that the officers failed to follow MPD policies governing police conduct during such chases, *id.* ¶¶ 108–09,

Kearney pleads no facts at all about the specific way in which officers pursued Herndon. *See id.* ¶¶ 103–40; *see also* MPD General Order OPS 301.03 § II(A)(2) (requiring pursuing officers to "exercise all caution and operate their vehicle in a safe manner," "continually evaluate and assess the actual conditions of the pursuit," and "immediately terminate a pursuit when ordered by a department official"). It thus goes without saying that she did not plead facts establishing that MPD officers were reckless or consciously indifferent to human life in how they operated their vehicles as part of the pursuit. *See* ECF No. 17 (Reply) at 4 (outlining the kinds of facts that could support that conclusion).

Kearney has, however, nudged over the plausibility line her theory that MPD officers acted grossly negligently when failing to inform the Park Police and Prince George's County of their realization that Herndon did not have a murder warrant and their accompanying decision to terminate their pursuit. As just noted, Kearney alleges that MPD trains its officers on the general danger posed by vehicle pursuits and instructs them that they are only to be undertaken in limited circumstances, including when—among other requirements—the suspect is believed to have committed a violent crime. Compl. ¶¶ 107–08; *see also* MPD General Order OPS 301.03 § II(A)(1). Kearney also alleges that MPD affirmatively recruited the Park Police and Prince George's County to join the chase, and that, during the period between MPD's withdrawal from the chase and Herndon's death, MPD received live updates from Prince George's County "regarding the location and direction of travel of Mr. Herndon." Compl. ¶¶ 34, 37–38. At this early stage of the litigation, it is plausible that MPD officers—knowing the danger posed by vehicle chases, knowing that Herndon had not committed the crime that initially motivated the chase, and knowing that other departments were nonetheless still chasing Herndon—acted recklessly by failing to inform the other officers whose help they had enlisted of their updated understanding of

Herndon's record and the propriety of the pursuit. Indeed, based on the allegations in the complaint, a reasonable juror plausibly could find that the MPD officers were consciously indifferent not only to Herndon's safety but also to the safety of the public, insofar as the officers allegedly stood by while their counterparts pursued Herndon at high speeds through populated areas of Maryland and the District.

Of course, Kearney must also show that the officers' omission was a proximate cause of Herndon's injuries. Although this is a close question, the Court again finds at this early stage that Kearney has alleged sufficient facts to suggest that it was.[2] *Cf. Pulliam v. Prince George's Cnty.*, 2020 WL 584185, at *8 (Md. Ct. Spec. App. 2020) (deeming proximate causation lacking based on video evidence introduced at summary judgment). According to the complaint, the fatal crash may have occurred as few as ten minutes after MPD realized Herndon had no warrant and discontinued its chase. Compl. ¶ 36. Given that timeline, as well as the fact that MPD was responsible for securing the initial involvement of the other departments, the Court agrees with Kearney that there is at least plausibly a "direct and substantial causal relationship" between MPD's recklessness and Herndon's death because, had MPD shared information when it became available, "the other agencies may have discontinued their pursuit before the fatal collision occurred." Opp. at 8; *see also id.* at 9–10 ("It was reasonable to believe that not providing the information regarding Mr. Herndon to [the other agencies] would result in [the other agencies] continuing their pursuit of him"). And the Court further agrees that, "given the nature of the

---

[2] The Court disagrees with the District's assertion that Kearney "failed to address the District's [] argument that . . . the MPD officers' conduct did not proximately cause [Herndon's] injuries," such that the Court could treat the issue as conceded. Reply at 3; *contra* Opp. at 9–10 (causation arguments).

pursuit[,] a collision like the one that resulted in Mr. Herndon's death was a [foreseeable] possibility." *Id.* at 10.

To be sure, the Court recognizes that other factors undoubtedly contributed to Herndon's death. Namely, Herndon should not have fled from police in the first place, and then could—and should—have stopped fleeing at any point during the hour-plus saga. As the complaint itself alleges, "no reasonable person in [Herndon's] position would have believed themselves free to leave." Compl. ¶ 66. Herndon's continued evasion of police also casts some doubt on the premise that the Park Police and Prince George's County would have ceased pursuing him even if MPD had informed them that he had no murder warrant and that MPD was pulling out of the chase. A common sense reading of the complaint and the inferences that could be drawn from it, *see Iqbal*, 556 U.S. at 679, counsels that Herndon may well have violated various laws—including but not limited to the requirement to obey lawful police orders—during his winding, late-night flight throughout two different jurisdictions. The other departments might therefore have decided that it was appropriate to pursue him even absent a warrant, and notwithstanding MPD's prior mistake. Finally, as the District emphasizes, Kearney specifically alleges that "[Park Police] and [Prince George's County]'s pursuit of Mr. Herndon caused Mr. Herndon to lose control of his vehicle," and also that "certain John Doe [Park Police] Officers forced Mr. Herndon off the road." Compl. ¶ 39. It is thus possible that the actions of the other departments in the moments preceding the collision were sufficiently unforeseeable as to constitute a superseding cause severing the causal link between MPD's actions and Herndon's death. *See Smith v. Hope Vill., Inc.*, 481 F. Supp. 2d 172, 202–03 (D.D.C. 2007).

But these fact-intensive issues cannot be resolved at this stage of the litigation, and dismissal therefore would be inappropriate while they remain unsettled.[3]

## B.    Negligent Training, Supervision, and Retention

To state a claim for negligent training, supervision, or retention under an ordinary negligence standard, a plaintiff must allege that an employer "knew or should have known its employee behaved in a dangerous or otherwise incompetent manner, and that the employer, armed with that actual or constructive knowledge, failed to adequately supervise the employee." *D.C. v. Tulin*, 994 A. 2d 788, 794 (D.C. 2010). The plaintiff must also show that the employer's failure to "use reasonable care in the supervision or retention of an employee [] proximately caused harm to plaintiff." *Blair v. D.C.*, 190 A.3d 212, 229 (D.C. 2018). Here, though, Kearney must allege still more. Because her negligent supervision claim concerns MPD's alleged failure to train its officers on how to initiate and conduct "reasonable [police] pursuit[s]," Compl. ¶ 117, that claim again "aris[es] out of the operation of an emergency vehicle on an emergency run," such that "the District shall be liable only for gross negligence." *Walker*, 689 A.2d at 42 (quoting D.C. Code § 2-412); *id.* at 49–50; *see also* MTD at 17; Opp. at 11 (seemingly conceding this point).

Regardless, Kearney fails to plead even ordinary negligence. The complaint contains no actual facts about the training or supervision that MPD provides its officers, or even which specific

---

[3] As noted, Kearney has sued John Doe MPD officers on the same claims she asserts against the District. *See generally* Compl. The District did not move to dismiss on the officers' behalf, but argues that Kearney's claims against them would fail for all the same reasons outlined in its motion to dismiss. *See* Reply at 9 n.2. Because the Court presently is not dismissing the District from the case, and because Kearney is entitled to some discovery (including discovery that may enable her to identify the MPD officers involved in Herndon's pursuit and understand their conduct), the Court declines to *sua sponte* dismiss the John Doe officers whom Kearney has not yet served. *Cf. Pizarro v. Mead*, 2022 WL 3681720, at *5 (D.D.C. 2022) (ordering *sua sponte* dismissal of John Doe officers for lack of personal jurisdiction where the complaint "d[id] not explain what relation th[e] case ha[d] to the District of Columbia").

elements of their pursuit-related training and supervision are at issue. *See, e.g.*, Compl. ¶ 117 (referring to unspecified "various general orders" that officers allegedly were not adequately trained on or held to). Instead, it simply reiterates the legal conclusion that MPD's "failure to properly train and discipline [] rendered the officers unfit and incompetent." *Id.* ¶ 119. The complaint also alludes to prior "unreasonable and unwarranted pursuits" for which officers allegedly were not disciplined, *id.* ¶ 118, but does not explain the circumstances of those pursuits or how they were meaningfully similar to the pursuit of Herndon.[4] These sparse allegations fail to give the District "fair notice" of the claims against it, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), much less to state a plausible claim for relief. *See, e.g.*, *Spiller v. D.C.,* 302 F. Supp. 3d 240, 255 (D.D.C. 2018) (requiring, as one example of adequate facts, those "that might plausibly show that the District, as a matter of course, failed to discipline or to retrain officers after serious incidents, or that incidents of the type at issue here occurred with such regularity that the District was on notice of some common propensity among MPD officers").

### C.    Intentional Infliction of Emotional Distress

"To prevail on an intentional infliction of emotional distress ('IIED') claim under D.C. law, a plaintiff must show: (1) extreme and outrageous conduct on the part of the defendant that (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Goolsby v. D.C.*, 354 F. Supp. 3d 69, 83 (D.D.C. 2019) (quotation marks omitted). "To satisfy the first

---

[4] The section of the complaint pertaining to *Monell* liability discusses an alleged MPD "pattern and practice of targeting black bikers with deadly force," such as by officers' "swerving into motorcyclist lane[s] of traffic[,] causing the rider to swerve, fall or lose control of the motorcycle[,] and chasing bikers into dangerous situations." Compl. ¶¶ 87–88. To the extent that these are the prior unreasonable pursuits on which Kearney seeks to base her negligent training claim—which is by no means clear from the complaint—it is not apparent how any failure to train officers in how to interact with black motorbike drivers could have proximately caused injuries to Herndon, who was not pursued on the basis of a "motorbike infraction[]." *Id.* ¶ 92; *see Blair*, 190 A.3d at 229.

element, the alleged conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quotation marks omitted). Kearney alleges that MPD officers acted beyond all possible bounds of decency in a manner that inflicted severe emotional distress upon Herndon when they "chased [him with] multiple law enforcement agencies for a crime [Herndon] knew he had not committed" and then later failed to inform the other agencies that Herndon actually did not have a warrant, thus "allow[ing] the other agenc[ies] to continue their pursuit." Opp. at 12.

As already discussed, the Court finds it plausible that the officers acted recklessly by, at minimum, omitting to inform the other police departments of their realization that Herndon was not wanted for murder and their decision to withdraw from the chase. But the Court does not find that their conduct—in initiating the chase, conducting it, or failing to communicate their termination of it—rises to the still higher "outrageousness standard." To the contrary, an "average member of the community" could regard the officers' actions as largely consistent with the law enforcement goals on which our civilized communities depend. *Purcell v. Thoms*, 928 A.2d 699, 711 (D.C. 2007).

## IV.    Conclusion

For the foregoing reasons, the Court will grant in part and deny in part the District's motion to dismiss, ECF No. 12. The Court will dismiss in full Kearney's § 1983 claim against the District, as well as her claims that the District is liable under D.C. law for ordinary negligence, negligent supervision, training, and retention, and intentional infliction of emotional distress. The Court will also dismiss MPD from the case. However, Kearney's gross negligence claim against the District may proceed on the theory that MPD officers were grossly negligent in failing to inform their

counterparts that Herndon did not have an active murder warrant and that MPD was terminating its pursuit.

An Order will accompany this Opinion.


DATE:  September 24, 2025

CARL J. NICHOLS
United States District Judge